UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STEPHANIE STARLING,**

Plaintiff,

vs.

**AMERILODGE GROUP, LLC,**
and **ASAD MALIK**
jointly and severally,

Defendants.

Case No.

Hon.

Jack W. Schulz (P78078)
SCHULZ GHANNAM PLLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **STEPHANIE STARLING**, for her Complaint against the Amerilodge Group, LLC, and Asad Malik, stating the following:

**INTRODUCTION**

1. On February 20, 2025, Plaintiff Stephanie Starling, along with a group of other coworkers, was invited to attend a Justin Timberlake by Asad Malik, the CEO of

her place of employment, Amerilodge Group LLC. At the concert, Malik made sexual advances and unwanted sexual contact with Starling. Starling rejected these advances and was so traumatized by the incident that she hid in the bathroom. Starling also notified her supervisor of what had occurred. Following the concert, Malik isolated Starling, drove her to a dark location, and again made unwanted sexual advances towards her. Starling again rejected these advances and was eventually allowed to leave after she threatened to run through the snow back to the hotel. Ultimately, Starling's boyfriend drove over an hour to pick her up and drive her home.

Both Starling and her supervisor reported the incident to human resources. Plaintiff was notified that a neutral third-party investigation would be carried out. However, the investigation was a complete sham and in no way neutral as it was performed by the same civil defense firm retained by Amerilodge. During the investigation, Plaintiff was terminated. Plaintiff was terminated during the investigation for pretextual reasons. Ultimately, the investigator purportedly found no misconduct and, instead, offered Starling a nominal amount of money to waive her rights against Malik and Amerilodge. Despite the investigatory "finding" that Plaintiff's allegations was "unsupported," on information and belief, *several* female employees of Amerilodge have previously been subjected to unwelcome sexual harassment and brought it to Defendants' attention. Defendants have made a conscious effort to silence these women in an effort to protect a predator than to assure this horrendous conduct ends.

Within this Complaint, Plaintiff alleges that she was subjected to sexual harassment and was terminated in retaliation for protected complaints pursuant to Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq*. Plaintiff also alleges tort claims of Assault, Battery, and Intentional Infliction of Emotional Distress.

## JURISDICITON AND VENUE

2. This Court has original jurisdiction pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S. C. § 2000e *et seq.*

3. Plaintiff has exhausted all available administrative remedies and has obtained her "right to sue letter" from the EEOC. (***Exhibit A***)

4. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff Stephanie Starling is a woman who was employed with Defendant Amerilodge Group, LLC, and resides in Saginaw County, Michigan.

7. Defendant Amerilodge Group, LLC, is a domestic limited liability company organized under the laws of the State of Michigan and based out of Bloomfield Hills, Michigan.

8. Defendant Asad Malik, on information and belief, is an individual who, upon information and belief, he is a resident of Oakland County, Michigan. At all relevant times, Malik served as the Owner and Chief Executive Officer of Defendant Amerilodge Group, LLC.

9. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

## GENERAL ALLEGATIONS

10. Plaintiff Stephanie Starling ("Plaintiff' or "Starling") is a woman and a member of a protected class based on her gender.

11. In August 2022, Plaintiff began working for Defendant Amerilodge Group, LLC, ("Amerilodge") as a Manager of its Courtyard by Marriott branded property in Bay City, Michigan.

12. On information and belief, Amerilodge is a privately owned company which manages, operates, and owns hotels in the Midwest primarily in Michigan, Indiana, and Ohio. Amerilodge operates hotels under the Hilton, Marriott, and InterContinental Hotel Group brands

13. At all relevant times here, Amerilodge was owned and operated by Defendant Asad Malik ("CEO Malik").

14. Plaintiff excelled at her position and was without significant discipline throughout her employment with Defendants.

<u>Plaintiff is sexually harassed by CEO Malik at a Justin Timberlake Concert</u>

15. On or around February 20, 2025, Plaintiff received an invitation from CEO Malik to attend a Justin Timberlake concert at Little Caesars Arena ("LCA") in Detroit, with CEO Malik and a group of employees.

16. Plaintiff was informed that all attendees would be meeting at an Amerilodge owned property, a Holiday Inn located in Troy, MI ("Holiday Inn"), then head to the concert as a group.

17. Plaintiff carpooled with another employee, General Manager Kelly Rivas ("Rivas"), to the Holiday Inn, however, they were running late due to traffic. Plaintiff texted CEO Malik to notify him and he responded that he would personally wait for Plaintiff to arrive. Ultimately, the group was still there when Plaintiff arrived and they collectively headed to LCA in three vehicle. Plaintiff rode with CEO Malik and three other employees in his personal vehicle. On information and belief, approximately 13 Amerilodge employees attended.

18. Before heading into the concert, the group met in a food area of the stadium. While in line for food, CEO Malik approached Plaintiff and stood near her. Plaintiff initiated a conversation with him and commented to CEO Malik when she first saw him at the Holiday Inn and that it looked like he was trying to hug her. In response, CEO Malik stated that he actually wanted to kiss Plaintiff and that he "bet it would be a good kiss too. Probably later tonight." Initially, Plaintiff nervously laughed. However,

soon after CEO Malik stood silently next to Plaintiff and said he was "just looking at her lips" and thinking of the kiss later that night. Plaintiff was stunned by the comment.

19. Plaintiff found her supervisor, Julie Allen ("Allen") and informed her not to say anything, but that CEO Malik said that he was going to give her a kiss. Plaintiff asked Allen to pay attention to things and be mindful not leave her along with him.

20. Plaintiff also notified Rivas of what had happened and told her that she would not be leaving Rivas' side to rule out any opportunity for CEO Malik to get her alone.

21. After everyone grabbed their food, everyone regrouped in one of LCA's club areas. Starling and Rivas found a row of booths and sat on the back booth side, leaving two chairs available opposite them. Despite the available seating, CEO Malik squeezed in between Plaintiff and Rivas. As Plaintiff was eating, CEO Malik slid his hand under her right thigh and touched her butt. Plaintiff was noticeably trembling in fear and her hand was shaking as she tried to eat.

22. Plaintiff asked Rivas to let her out so she could use the restroom. Rivas said she needed to do the same and would go with her. On the way, Rivas asked Plaintiff why her hand was trembling at the table. Once in the bathroom Plaintiff notified Rivas of what had occurred. Upon leaving the bathroom, they did not return to the booth.

23. Plaintiff informed Rivas that she needed a drink to calm her nerves. CEO Malik noticed and bought Plaintiff and Rivas drinks before the concert started.

24. When it was time to enter the concert to their actual seats, CEO Malik was standing at the top guiding each person in the group where to go for their seats. Plaintiff asked CEO Malik where her seat was and was told to step aside. CEO Malik then directed Rivas to sit with the rest of the group. Next CEO Malik pointed to two empty seats for him and Plaintiff. As Plaintiff walked to the seat, she requested Rivas to sit in the seat next to her as Asad was still directing people. As a result, CEO Malik could not sit next to Plaintiff.

25. During the concert, CEO Malik was visibly angry with the situation. Plaintiff became anxious thinking about how awkward it was going to be after the concert and that she wanted to avoid riding with him back to the Holiday Inn, where Plaintiff and Rivas had planned to stay for the night.

26. Plaintiff texted her brother, who lives in the metro Detroit area, to see if he was at home. Plaintiff notified her brother that she was in a pickle and wanted to see if she could be picked up as she was at LCA and was molested by the CEO of her company.

27. Plaintiff's brother called Plaintiff, but it was difficult to communicate due to the concert. Her brother asked if Plaintiff had called their father or uncle. Plaintiff responded that she had not because she was not trying to create any commotion and was seeking an easy escape.

28. After, Plaintiff's phone started receiving non-stop calls from her family. Plaintiff headed to the bathroom to speak with her father somewhere private and quiet.

Plaintiff explained to her father what had happened and cried emotionally. Plaintiff's father said he was going to contact the authorities and Plaintiff begged him not to as she did not want to make a scene as this was the CEO and she was at a work function with colleagues.

29. While Plaintiff was in the bathroom, she received several calls and texts from CEO Malik.

30. When Plaintiff exited the bathroom stall, Allen and another employee were standing outside and had clearly overheard Plaintiff's conversation. Plaintiff, still crying, explained to Allen what has happened and that she had reached out to her brother and father. Allen informed Plaintiff that she was be reporting this to Human Resources the following day. Plaintiff informed Allen that she would be taking an Uber back from the concert, but needed to get some personal belongings from inside CEO Malik's vehicle. Additionally, her coat was on the seat inside the concerts and contained her drivers license and debit card.

31. Plaintiff returned to the concert and her coat was nowhere to be found. Plaintiff tried to keep her composure and began leaving with the rest of the group. Plaintiff needed her things from CEO Malik's vehicle and ended up riding in the 3rd row with Rivas and a few other passengers.

32. Upon exiting the vehicle at the Holiday Inn, Ceo Malik stopped Plaintiff and asked her to hop in the front because he needed to talk to her. Plaintiff locked eyes

with Rivas because she knew the situation and that Plaintiff did not want to be alone with CEO Malik.

33. Plaintiff entered the front seat and CEO Malik immediately drove to the a dark area on the opposite side of the hotel. CEO Malik then undid his seatbelt, leaned towards Plaintiff and said "time for that kiss." Plaintiff immediately notified CEO Malik that she did not want to kiss him and stated that she could not kiss him, that she needed to leave right away for a family emergency related to her brother, and also that she needed to use the bathroom immediately.

34. CEO Malik responded that he would drive Plaintiff to where the emergency was. Plaintiff rejected the offer and said that her father was on his way. CEO Malik then asked a second time to kiss Plaintiff to which she said could not. CEO Malik became noticeably agitated and asked "*what do you mean you CAN'T*?" Plaintiff repeated that she needed to go to the bathroom and that she would walk through the snow back to the hotel if he didn't drive her back now. Following this comment, CEO Malik drove Plaintiff back to the main entrance. CEO Malik then asked Plaintiff to send out Rivas so that he could talk to her.

35. After, Plaintiff's boyfriend drove all the way down from Bay City to pick her up and drive her home. Plaintiff cried the entire ride home and was unable to work the next day.

36. On February 22, 2025, Plaintiff spoke with Amerilodge director of Human Resources Sarah Atkins ("HR Atkins") and shared what had happened the evening of the concert. Plaintiff also notified HR Atkins that she was fearful of reporting CEO Malik as he owns and operates the entire company.

37. On information and belief, Allen had also reported the incident to human resources.

38. HR Atkins informed Plaintiff that, due to the situation, she was "hiring a third party company through the state of Michigan" which would conduct a private and confidential investigation.

39. Later that week, Plaintiff was contacted by Bodman attorney Mackenzie Clark ("Attorney Clark") to set up a zoom meeting.[1] At the meeting, Plaintiff explained in detail what had occurred to Attorney Clark.

40. Plaintiff continued to work for Amerilodge in the normal course during the investigation.

41. After several weeks, Plaintiff still had not heard any follow-up from Attorney Clark or in regard to her complaint. Plaintiff emailed Attorney Clark asking for an update and what she should expect next. Clark responded that interviews were

[1] On information and belief, Bodman is a private firm which is on retainer with Amerilodge. Notably, despite presenting itself as a third party, the Bodman firm has represented Amerilodge in relation to her charge of harassment filed with the EEOC.

ongoing and that she would compile her findings into a report which would be provided to the HR department of Amerilodge for them to decide what to do.

42. Although the investigation was supposed to be confidential, Plaintiff's allegations were frequently and openly discussed by her coworkers.

43. Plaintiff also noticed increased hostility towards her in several ways, including, but not limited to new forms of micromanagement.

44. On March 12, 2025, Plaintiff spoke with Allen over the phone about how coworkers were openly discussing her investigation from coworkers and the hostility she was feeling. Reasonably, the events were causing Plaintiff severe emotional distress. Indeed, Plaintiff was crying and obviously emotionally distressed on the call. Plaintiff notified Allen that things were overwhelming emotionally and that she needed to leave for the day.

45. Following the call, Plaintiff's company email access was immediately revoked. Plaintiff contacted Allen a second time about the access removal and was told "if you're going to quit, I need a resignation letter." Plaintiff made clear that she had no intention of resigning and was shocked at Allen's reaction after everything that has happened.

46. Plaintiff was shocked that she was being treated this way and not even asked if she was okay.

47. Later, on March 12, 2025, Plaintiff spoke with Human Resources and made them aware of the situation, including that employees were openly discussing the investigation. On the call, Plaintiff affirmatively stated that she had no intention of resigning.

48. On March 13, 2025, Starling received an email from Amerilodge HR stating the company was "upholding [her] resignation."

49. Starling never resigned from Amerilodge. She was terminated.

50. On April 1, 2025, Starling received a call from Attorney Clark notifying Plaintiff that the investigation was now closed and that they could not substantiate her claims of sexual harassment as there were no eyewitnesses. Despite purportedly being a neutral third-party investigator, Attorney Clark presented Plaintiff with an offer of settlement in exchange for a waiver of her claims against Amerilodge and CEO Malik. The offer was rejected.

51. On April 10, 2025, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment, hostile work environment, and retaliation. Following the filing of her charge, Plaintiff learned Amerilodge is being represented by the same law firm which performed the alleged neutral investigation and had previously presented her with a settlement offer.

52. On July 23, 2025, Plaintiff was issued her right to sue letter relating to her claims of sexual harassment, hostile work environment, and retaliation pursuant to Title VII. ***Exhibit A***

53. Prior to filing this complaint, Plaintiff became aware of other previous employees of Amerilodge who have made similar allegations against CEO Malik. On information and belief, Defendants were aware of there previous allegations of sexual harassment against Defendant Malik prior to the harassment suffered by Plaintiff and took no action to prevent future harassment.

**COUNT I**
**SEXUAL HARASSMENT - TITLE VII, 42 U.S.C. § 2000e**
**(*Against Defendant Amerilodge Group, LLC)***

54. All preceding paragraphs are incorporated by reference.

55. At all relevant times, Plaintiff and Defendant Amerilodge were covered by and within the meaning of the Title VII, 42 U.S.C. § 2000e *et seq*.

56. Defendant Malik had supervisory duties over Plaintiff with the authority to affect the terms and conditions of Plaintiff's employment.

57. Plaintiff was subjected to unwelcome sexual advances because of her sex.

58. Plaintiff was sexually assaulted by CEO Malik.

59. Defendant Malik possessed authority and/or influence to offer tangible job benefits in exchange for sexual favors and to threaten job injury for Plaintiff's failure to submit.

60. Plaintiff's submission to CEO Malik's sexual advances was an implied condition of her employment such that her refusal to submit would and did result in a tangible job detriment.

61. Plaintiff's rejection of the sexual advances from Malik did result in tangible job detriment.

62. Plaintiff's refusal to ignore the sexual harassment she faced factored in the decision to harass, discipline, and terminate Plaintiff.

63. Defendant Amerilodge is liable for Malik's harassment.

64. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiffs' rights and sensibilities.

65. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT II**
**SEXUAL HARASSMENT - ELLIOT-LARSEN CIVIL RIGHTS ACT**
**M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

66. All preceding paragraphs are incorporated by reference.

67. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

68. Plaintiff was subjected to unwelcome sexual advances because of her sex.

69. Plaintiff was subjected to unwelcome sexual contact because of her sex.

70. On information and belief, Defendants were aware of previous allegations of sexual harassment against Defendant Malik prior to the harassment suffered by Plaintiff and took no action to prevent future harassment.

71. Plaintiff's rejection of Defendant Malik's sexual advances was a factor that made a difference in Defendants' decision with treatment, and termination of Plaintiff.

72. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

73. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT III**
**HOSTILE WORK ENVIRONMENT - SEX**
**TITLE VII, 42 U.S.C. § 2000e**
***(Against Defendant Amerilodge Group, LLC)***

74. All preceding paragraphs are incorporated by reference.

75. Plaintiff was sexually harassed by the owner/CEO of her place of employment.

76. Plaintiff was subjected to a pretextual "investigation" performed by Amerilodge's own attorneys only to be offered hush money regarding CEO Malik's conduct, despite, on information and belief, previous known similar incidents.

77. Plaintiff was subjected to continued harassment, seclusion, retaliation, and other hostile treatment based on her gender, the rejection of unwelcome sexual conduct and communications, and her reporting of CEO Malik.

78. The sexual conduct, treatment, hostility, and communications substantially interfered with Plaintiff's employment and created a hostile and offensive work environment that became threatening and intimidating.

79. The hostile environment caused by Defendants caused Plaintiff great stress at work and, in some cases, brought Plaintiff to tears.

80. Defendants were aware of the sexual harassment and treatment of Plaintiff and previous women and have failed to take any remedial action.

81. On information and belief, Defendants were aware similar prior incidents of sexual harassment by Defendant Malik and failed to take any remedial action to prevent future harassment, such as that suffered by Plaintiff.

82. Defendants utilized their civil defense attorneys under the pretext of being a neutral third party investigator to conduct a sham investigation of Plaintiff's allegations of sexual harassment only to terminate her and offer her hush money.

83. Plaintiff suffered harm because of the harassment.

84. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT IV**
**SEX DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

85. All preceding paragraphs are incorporated by reference.

86. Plaintiff faced sexual harassment in the workplace due to her gender.

87. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

88. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

89. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT V**
**RETALIATION - TITLE VII, 42 U.S.C. § 2000e**
***(Against Defendant Amerilodge Group, LLC)***

90. All preceding paragraphs are incorporated by reference.

91. Plaintiff engaged in activity protected by Title VII when she complained of the sexual harassment that she experienced by Defendant Malik.

92. Plaintiff engaged in activity protected by Title VII when she participated in the investigation of the sexual harassment that she experienced by Defendant Malik.

93. Defendants retaliated against Plaintiff because she reported and opposed Defendant Malik's sexual harassment.

94. Defendants retaliated against Plaintiff when she affirmatively rejected the sexual advances of Defendant Malik.

95. Defendants treated Plaintiff differently than similarly situated employees who did not make protected complaints.

96. Defendants disciplined and terminated Plaintiff in retaliation for her protected activity.

97. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

98. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT VI**
**RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT,**
**M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

99. All preceding paragraphs are incorporated by reference.

100. Plaintiff engaged in protected activity when she complained of the sexual harassment that she experienced by Defendant Malik.

101. Plaintiff engaged in protected activity when she participated in the investigation of the sexual harassment that she experienced by Defendant Malik.

102. As a result of Plaintiff's protected activity, Plaintiff received unequal treatment and was subject to unequal discipline, including her termination.

103. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**M.C.L. § 37.2101 *et. seq.***
***(Against All Defendants)***

104. All preceding paragraphs are incorporated by reference.

105. Defendant Malik

106. Defendants utilized their civil defense attorneys under the pretext of being a neutral third party investigator to conduct a sham investigation of Plaintiff's allegations of sexual harassment only to terminate her and offer her hush money.

107. Defendants either deliberately or carelessly failed to keep any level of confidentiality regarding the investigation of Plaintiff's protected complaint, as well as the underlying traumatic treatment she faced. As a result, the allegations were openly discussed by coworkers.

108. Defendants knowingly, intentionally, and willfully caused Plaintiff severe emotional distress.

109. On information and belief, Defendants were aware that Malik was subject to multiple previous accusations of sexual harassment similar to that of Plaintiff, prior to the harassment suffered by Plaintiff.

110. On information and belief, Defendants … investigation….

111. Defendants intentionally and/or recklessly engaged in extreme and outrageous conduct towards Plaintiff.

112. Defendants knew or should have known that each of these and other actions individually and/or collectively would cause severe emotional distress.

113. Each of these acts individually and/or collectively, were undertaken with intent to cause Plaintiff severe emotional distress and/or were undertaken recklessly without regard to whether they would case the Plaintiff severe emotional distress.

114. As a result of the actions of the Defendants, Plaintiff was caused to suffer severe emotional distress including but not limited to anxiety, depression, mental anguish, embarrassment, humiliation, and isolation.

115. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment,

mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT VIII**
**ASSAULT AND BATTERY**
**(IN VIOLATION OF STATE LAW)**
***(Defendant Asad Malik)***

116. All preceding paragraphs are incorporated by reference.

117. The aforementioned actions and conduct of Defendant Malik, incorporated herein, were willful, wanton, intention and/or reckless.

118. The aforementioned actions and conduct of Defendant Malik, as incorporated herein, created a reasonable apprehension of an immediate threat of harm, offensive touching, and/or sexual assault to Plaintiff.

119. The aforementioned actions and conduct by Defendant Malik, as incorporated herein, did in fact constitute an offensive and harmful touching and/or sexual assault of Plaintiff.

120. Defendant Malik groped Plaintiff's leg and butt and attempted to kiss her several times without consent.

121. Defendant Malik knew or should have known that his aforementioned actions and/or conduct would cause injury to Plaintiff.

122. As a proximate result of the unconstitutional acts of Defendant Malik, Plaintiff was harmed and suffered damages for her mental and emotional injury, pain, mental anguish, humiliation, and embarrassment.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendants constitute unlawful practices in violation of Title VII, the ELCRA, and tort law;

b. Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiff appropriate equitable relief;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive damages;

f. Award Plaintiff reasonable attorney fees, costs, and interest; and

g. Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ GHANNAM PLLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorney for Plaintiff*

DATE: August 13, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STEPHANIE STARLING,**

Plaintiff,

vs.

Case No.

Hon.

**AMERILODGE GROUP, LLC,**
and **ASAD MALIK**
jointly and severally,

Defendants.

______________________________________________/

Jack W. Schulz (P78078)
SCHULZ GHANNAM PLLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

______________________________________________/

**DEMAND FOR TRIAL BY JURY**

Plaintiff Stephanie Starling hereby demands a trial by jury.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ GHANNAM PLLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*